Case 31.—APPLICATION TO THE APPELLATE COURT FOR MANDAMUS BY THE COMMONWEALTH ON THE RELATION OF PAUL C. BARTH AGAINST J. W. McCANN, JUDGE OF THE POLICE COURT OF THE CITY OF LOUISVILLE TO COMPEL HIM TO TRY CERTAIN CRIMINAL OFFENSES.—June 13.

### Commonwealth by Barth, &c. v. McCann, Judge.

|123|247|
|129|326|

Writ of mandamus denied by equally divided Court.

1. **Intoxicating Liquors—Sale on Sunday—Constitutionality of Statute Forbidding**—Section 1303 Ky. Stats, providing that "any person who shall, on Sunday, keep open a bar room or

other place for the sale of spirituous, vinous or malt liquors, or who shall sell or otherwise dispose of such liquors or any of them, shall be fined not less than ten nor more than fifty dollars for each offense" is constitutional.

2. Same—Police Power of Legislature—Section 61 of the Constitution was not meant to take away from the legislature any police power which it had over the liquor traffic, but simply to provide by general law how the various municipal sub-divisions of the State could, by a vote, determine the question of prohibition or regulation for themselves, but until there had been this vote the power of the State was untrammeled. There is no provision of the Constitution which surrenders the police power of the State.

3. Same—Separate Offenses on Same Day—Liability—The fact that there are two separate offenses denounced in the statute does not make it unconstitutional. The keeping open of a bar room on Sunday for the sale of liquors is one offense, the act of selling is the other, and each sale made on Sunday constitutes a separate offense for which a separate arrest and trial may be had.

4. Continuous Offense—A violation of sec. 1303 Ky. (Stats.) by keeping open a bar room on Sunday for the sale of liquors, is not necessarily a continuous offense. If one is arrested for keeping his bar room open on Sunday morning, and after giving bail, he returns and opens it again on the same day he has committed two offenses for each of which he may be arrested and tried.

5. Arrest—Warrant of Police Judge—Necessity For—Any peace officer may without a warrant make an arrest for an offense committed in his presence, and the fact that the offender is "a citizen and taxpayer" will not exempt him from arrest without a warrant.

6. Who may Enforce Statute—Jurisdiction—Not only may this statute be enforced by the police court of the city of Louisville, but prosecutions under it may also be proceeded with by indictment and trial in the criminal division of the Jefferson Circuit Court. In addition the county judge of Jefferson county, and all justices of the city of Louisville have jurisdiction to enforce this statute and punish its violators. The sheriff, his deputies and constables of the county are clothed with the same    powers possessed by policemen to    make arrests for offenses against the statute.

7. Mandamus Against Police Judge—As to the questions thus far decided the members of this court are fully agreed, but on the question as to whether the mandamus applied for should

be granted they are equally divided, therefore the writ is denied.

A. P. HUMPHREY and A. E. RICHARDS for plaintiff.

## PROPOSITIONS.

1. Section 1303 is valid and should be enforced against all persons, regardless of whether they do or not observe some other day than Sunday as their Sabbath.

2. That the statute embraces two separate offenses.

3. That a penal officer may arrest without a warrant where either offense is committed in his presence.

4. Where a person has been once arrested and bailed, reopens the bar room and again sells, he is guilty of new offenses and may be again arrested.

5. Each sale of liquor, whether to the same person or to different persons is a separate offense.

## AUTHORITIES CITED.

Pennington v. Woolfolk, 79 Ky., 15; Hindman v. Toney, 97 Ky., 415-420; Weaver v. Toney, 107 Ky., 426; Shackelford v. Patterson, Judge, 110 Ky., 864; Hargis v. Parker, 27 K. L. R., 443; Commonwealth v. Jones, 82 S. W., 643 (S. C., 26 K. L. R., 867); Jenkins v. Berry, 83 S. W., 594 (S. C., 26 K. L. R., 1141); Hoke v. Commonwealth, 79 Ky., 568; Vance v. Field, 89 Ky., 183; L. & N. R. R. Co. v. Miller, 112 Ky., 468; Kelly v. Toney, 95 Ky., 388; Schmidt v. Mitchell, 95 Ky., 342; Shoemaker v. Hodge, 111 Ky., 436; Commonwealth v. Newell, 114 Ky., 420; 13 Encyclopedia of Pleading and Practice, p. 537; High on Extraordinary Remedies, sec. 650; Ex Parte Parker, 120 U. S., 737; Ex Parte Parker, 131 U. S., 221; Conway v. Fulton, 23 Gratton (Va.), 579; State v. Smith, 68 N. E., 1045 (69 Ohio St., 196); State v. Reeves, 32 Southern Rep., 814 (44 Fla., 179); August Elsner v. State, 30 Tex., 524; 2nd McClain Crim. Law, sec. 1264; 11 Am. & Eng. Enc. of Law, 685, 1 ed.; State v. Small, 31 Mo., 197; Crim. Code, secs. 26, 36, 46; Ky. Stat., secs. 2934, 4102, 4204, 4208; Anderson v. Commonwealth, 13 Bush, 488; Stickrod v. Commonwealth, 86 Ky., 290; Burnside v. Lincoln County Court, 86 Ky., 427; Megowan v. Commonwealth, 2 Met., 4; Connor v. Commonwealth, 13 Ky. L. Rep., 403.

KOHN, BAIRD & SPINDLE for respondent.

1. We think it is now too well established to be longer the subject of dispute that a court of merely appellant jurisdiction may correct errors only by virtue of those proceedings which in the

course of the common law bring before it the parties to be affected and the record to be corrected. A writ of mandamus is not an appellate but an original writ, and may never be used in the exercise of merely appellate jurisdiction except in aid of a case on appeal, or where necessary to enable the court to exercise its appellate jurisdiction. (Marbury v. Madison, 1 Cranch, 175; Daniel v. County Court of Warren, 1 Bibb, 496.)

2. It is a fundamental principle controlling this writ that it will not be issued where there is any other remedy, and under constitutional provisions like sec. 110 it never issues, even to correct an abuse of jurisdiction, when there is an appeal to, or a right in an inferior court to correct the abuse. A great number of authorities on this proposition is collected in the Note to State v. Johnson, 51 L. R. A., at 107, 109.

### AUTHORITIES CITED.

Marbury v. Madison, 1 Cranch, 175; Daniel v. County Court of Warren, 1 Bibb, 496; Constitution, sec. 110; Arnold v. Shields, 5 Dana, 19; Pennington v. Woolfolk, 79 Ky., 15; Hoke v. Comm., 79 Ky., 568; Comm. v. Newell, 114 Ky., 420; Koheen v. Myers, 18 B. Mon., 423; Louisville Industrial School v. City of Louisville, 88 Ky., 591; Vance v. Field, 89 Ky., 178; Hindman v. Toney, 97 Ky., 415; Scott v. Tully, 106 Ky., 69; Weaver v. Toney, 107 Ky., 419; McCain v. City of Louisville, 23 R., 588; Blair v. McCann, 23 R., 1227; Atkinson v. Reilly, 23 R., 731; Terry v. Baker, 23 R., 2406; Shackelford v. Patterson, 110 Ky., 864; Schumaker v. Hodge, 111 Ky., 440; L. & N. v. Miller, 112 Ky., 468; Campbellsville Telep. Co. v. Patteson, 114 Ky., 57; Clark County v. Warner, 116 Ky., 801; Comm. v. Jones, 26 R., 867; Jenkins v. Berry, 26 R., 1141; Hargis v. Parker, 27 R., 442; 2 Spelling on Extraordinary Relief, secs. 1388, 1389, 1393; High on Extraordinary Remedies, secs. 173, 189, 190, 252, 257; State v. Houston, 40 La. Ann., 393; 4 Southern, 50; Ky. Statutes, sec. 2911.

OPINION BY JUDGE SETTLE.

Section 1303, Ky. St. 1903, provides: "Any person who shall, on Sunday, keep open a bar room or other place for the sale of spirituous, vinous, or malt liquors, or who shall sell or otherwise dispose of such liquors, or any of them, shall be fined not less than $10.00 nor more than $50.00 for each offense." Quite a number of persons, saloon keepers of the city of

Louisville, charged with violating this statute, were arrested on Sunday, May 27, 1906, and taken before the police court of that city on the day following under warrants for the offense indicated. Several of them after being arrested and admitted to bail at once reopened their places of business, and continued the sale of liquors on the Sabbath in violation of the statute. Some of these persons were re-arrested by reason thereof, and it was necessary to arrest one of them as many as six times in order to make him obey the law.

Upon the calling of the cases for trial in the police court the defendants demurred to the warrants. The court sustained the demurrers, and in an exhaustive opinion gave the following reasons for so holding: (1) That section 1303 of the statute, supra, was unconstitutional; (2) that the offense denounced by it was a continuous one, and there could be but one arrest, therefore all the warrants except those under which the first arrests were made were dismissed; (3) that there could be no arrest for the violation of this statute except upon a warrant previously issued by the judge of the court, on information sworn to before him, and that he could even then in his discretion refuse to issue the warrant. Following this disposition of the cases, Paul C. Barth, mayor of the city of Louisville, under the authority conferred by section 2791, Ky. St. 1903, which as to the mayor of cities of the first class, provides: "It shall be the duty of the mayor (1) to be vigilant and active in causing the ordinances of the city and the laws of the State to be enforced" * * * in the name of the commonwealth—he joining therein in his official capacity, as relator—filed a petition in this court for a mandamus directed to the judge of the police court of Louisville, commanding him to try the accused for the offense charged in the several warrants in question. The plaintiffs base their claim to the relief asked upon

section 110, State Const., and section 949, Ky. St. 1903, which confer upon this court power to issue such writs as may be necessary to give it control of inferior jurisdictions. The defendant, J. W. McCann, judge of the police court of the city of Louisville, both by demurrer and argument of counsel, insists that plaintiffs have not legal capacity to maintain the action; that this court has no jurisdiction of the subject-matter of the action, and that the petition does not state a cause of action.

In our opinion the constitutionality of section 1303, Ky. St. 1903, is altogether free from doubt. While it is true that no case in which the right to prohibit the sale of liquor on Sunday was involved has recently been decided by this court, because its jurisdiction has been limited by statute to cases where the fines inflicted must exceed $50, before the enactment of the present statute as to jurisdiction, the constitutionality of an ordinance of the city of Lexington similar in terms and meaning to the statute, supra, was upheld by this court in Megowan v. Commonwealth, 2 Metc. 4. The appellant was fined $50 in the lower court. In affirming the judgment this court said: "It cannot be doubted that the Legislature of the State has the power to prohibit tavern keepers who may be licensed after the passage of the law, from selling spirituous liquors on Sunday. The city council, according to the foregoing provision in the city charter, have power to pass any ordinance for the government of the city, not contrary to the Constitution of the State or of the United States. They have, therefore, the same power over the subject within the city limits that the Legislature has within the State." In Connor v. Commonwealth, 16 S. W. 454, 13 Ky. Law Rep. 403, the appellant was by judgment of the lower court deprived of his license because of his conviction "on three indictments of having unlawfully opened a bar room in his said tavern for the sale of vinous, spirit-

uous, and malt liquors on three Sundays.'' On appeal the judgment was affirmed.

It is said that in argument before the police court it was contended by counsel representing the persons then on trial, that the section of the statute under consideration was invalid because in conflict with section 61 of the Constitution, which declares: ''The General Assembly shall by general law, provide a means whereby the sense of the people of any county, city, town, district, or precinct may be taken as to whether or not spirituous, vinous, or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale, or gift of such liquors.'' It was further contended that by section 61, supra, all questions as to whether the sale of liquors shall be allowed or regulated are given over to the vote of the people of the various counties, districts, etc., consequently the Legislature is without power to legislate directly on the liquor question, and that the matter of allowing, prohibiting, or regulating the sale of spirituous liquors can only be dealt with under the local option law. We quite agree with the contention of plaintiff's counsel that section 61 was not meant to take away from the Legislature any police power which it had over the liquor traffic, but simply to provide by general law how the various municipal subdivisions of the State could by a vote, determine the question of prohibition or regulation for themselves; but until there had been this vote the power of the State was untrammeled. In Brown v. Commonwealth, 98 Ky. 652, 17 Ky. L. R. 1216, 34 S. W. 12, it is said: ''The fact that the Constitution made it incumbent upon the General Assembly to provide a general law on the subject of taking the sense of the people as to whether liquors should be sold, did not deprive the General Assembly of the power to permit or prohibit the sale

of liquor until such time as the sense of the people could be taken in the manner prescribed by the general law. It could have passed such laws as would have authorized the sale of liquors in localities where prohibition laws had been in force, or it could have passed a law prohibiting the sale in communities where the sale of liquors had been licensed. In other words the General Assembly had the authority to fix the statutes of any county, city, town, district, or precinct as to the sale of liquors, until such time as the sense of the people should be taken as provided by a general law on the question."

Indeed the section, supra, itself, provides that nothing therein shall be construed to interfere with or repeal any law in force relating to the sale of liquors, and when the Constitution was adopted, the statute law, then as now, forbade the opening of saloons, or the sale of liquor on Sunday, and this statute was not repealed by the adoption of the Constitution. There is no provision of the Constitution which surrenders the police power of the State. The police power of State is comprehensive. It may at all times be invoked to suppress lawlessness, or to protect the public peace, health, and morals. As said in Burnside v. Lincoln County Court, 86 Ky. 427, 9 Ky. L. R. 635, 6 S. W. 277: "It is now settled, however, by not only the decisions of the Supreme Court of the United States, but by the highest court of nearly every State in the union, that the Legislature of a State may under the police power which is vital to its existence, not only regulate, but restrict the retail liquor traffic. * * * If any evil which destroys the morals, the fortunes, and the lives of so many of our best citizens, one which is so fruitful of pauperism and misery, and productive of probably eight-tenths of the crime in the country, were not subject to the legislative power, it would be strange indeed . * * * No one has ever had the right to sell whisky in this commonwealth,

save as a privilege. It has always been the creature of license. The police power is properly and necessarily a broad one. It is difficult if not impossible, to fix its limits. The property owner requires and holds his property subject to the right of the Legislature under this power to control it, whenever the public peace, or the public morals, or the public health is involved; otherwise the many would be at the mercy of the few, lawlessness and disorder would take the place of law and order, and the appetites and passions of a few persons would imperil the public peace and endanger our social fabric. The individual profit of the few, arising from the wreck of fortunes and lives must give way to the happiness and security of the many. It belongs to the legislative department of the government, this necessarily sweeping power to determine primarily what measures are needful for the protection of the public health, the public morals, and the public safety." Anderson v. Commonwealth, 13 Bush, 488; Strickrod v. Commonwealth, 86 Ky. 290, 9 Ky.L.R.563, 5 S. W. 580. What is said in the opinion, supra, as to the right of the Legislature to regulate the sale of liquors under the police power, applies with equal force to its right under the same power by proper legislation to prevent desecration of the Sabbath, and the courts everywhere have upheld such statutes as the one under consideration. The fact that there are two separate offenses denounced in the statute does not make it unconstitutional. The keeping open a bar room on Sunday for the sale of liquors is one offense, the act of selling the other, and each sale made on Sunday constitutes a separate offense, for which a separate arrest and trial may be had. In 2 McClain's Crim. Law, §1264, it is said: "Sometimes the statutes relate only to selling on Sunday, but, where they provide for selling or keeping open a place for sale, these are two distinct offenses for which separate convictions may be had, even though there is only proof of one particular sale."

"The retailing of spirituous liquors to two distinct persons at the same time and place constitutes two distinct offenses, and not a single offense." 11 A. & E. Ency. of Law (1st Ed.) 685; Commonwealth v. Hogan, 97 Mass. 120; Commonwealth v. Very, 78 Mass. 124; State v. Barron, 37 Vt. 57; Commonwealth v. Dove, 2 Va. Cas. 26. A violation of section 1303, by keeping open a bar room on Sunday for the sale of liquors, is not necessarily a continuous offense. If one is arrested for keeping his bar room open on Sunday morning, and, after giving bail, he returns and opens it the second time on the same day, he has committed two offenses, for each of which he may be arrested and tried. There is no ground upon which to rest the contention that there could be no arrest for the violation of the statute in question except upon a warrant sworn out before the judge of the city court, or that he could in his discretion refuse to issue the warrant. Any peace officer may, without a warrant make an arrest for an offense committed in his presence. His authority to do so is expressly conferred by section 36, Cr. Code Prac., which provides: "A peace officer may make an arrest (1) in obedience to a warrant of arrest delivered to him; (2) without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony." By section 26 the following persons are designated as "peace officers," viz., sheriffs, constables, coroners, jailers, marshals, and policemen. That any act which is denounced as unlawful and made punishable by fine is "a public offense," goes without saying. And to hold that a peace officer cannot make an arrest when he sees the offense committed, would be to connive at the escape of many lawbreakers in the larger cities, and greatly cripple the efficiency of the police departments. Where the offense is committed in the presence of the officer, the fact

that the offender is "a citizen and taxpayer" will
not exempt him from arrest without a warrant.  The
jurisdiction of the police court of the city of Louis-
ville to try and punish violators of the Sunday stat-
ute cannot be questioned, for by section 2913, Ky.
St. 1903, it is given "power to impose such fines and
penalties as may be prescribed by the statutes of the
State, or by the ordinances of the city, but no impris-
onment exceeding 20 days shall be ordered and no
fine exceeding $50 shall be imposed without the in-
tervention of a jury, unless the right to have a jury
be waived by the party to be tried."

The fact that the commonwealth has not the right of
appeal in prosecutions under this statute ought to
make the police court the more careful to enforce
it.  Not only is there nothing in the way of the en-
forcement of the statute, supra, by the police court
of the city of Louisville, but prosecutions under it
may also be proceeded with by indictment and trial
in the criminal division of the Jefferson circuit court.
In addition, the county judge of Jefferson county and
all justices of the peace of the city of Louisville, are
by the Constitution made conservators of the peace,
and are by statute given jurisdiction to enforce this
statute, and punish those who violate its provisions.
The sheriff, his deputies, and constables of the county
of Jefferson, are also clothed with the same powers
possessed by policemen to make arrests for offenses
against the statute.  It is manifest, therefore, that
by the employment of these various instrumentalities,
the statute may be enforced, and equally manifest
that the enforcement will impose only a reasonable
regulation upon the sale of intoxicating liquors and
prevent desecration of the Sabbath, which the good
of society demands should be observed as a day of
rest and worship.

As to the questions thus far discussed in this opin-
ion, the members of the court are fully agreed, but,

on the question of whether the mandamus applied for should be granted, they are equally divided; three of them being of the opinion that the court has the power under the Constitution to award the writ, and three of them that it has not such power, and therefore the writ is denied.

In view of the importance of the questions involved, we have expressed our views as above indicated, assuming that when the judge of the city court is advised by this court that the statute is constitutional, it will be his pleasure to enforce the law, and discharge his duty faithfully in upholding the mayor and police of the city in their efforts to do so.